## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Docket no. 09-cr-190-P-S |
| ALTON FORTSON, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER ON MOTION TO SUPPRESS

Before the Court is Defendant's Motion to Suppress (Docket # 19).  The Government filed its objection (Docket # 24), including an affidavit from the state trooper involved in the arrest of Defendant (Docket # 24-1).  The Court held a conference of counsel at which counsel for Defendant indicated that Defendant did not dispute any of the facts laid forth in this affidavit.  Having determined that no evidentiary hearing is necessary, the Court DENIES the Motion to Suppress for the reasons stated herein.

## I.    FACTS

On October 2, 2009 at approximately 2:00 P.M., Corporal Robert Byron of the Maine State Police was located in the northbound breakdown lane at mile 17 on the Maine Turnpike when he observed a Subaru pass by in the passing lane.  Prior to observing the Subaru, Trooper Byron had been advised that DEA Task Force Officer Michael Dumond had information that the occupants of the Subaru had traveled to Boston and were returning to Maine with crack cocaine.  As the Subaru approached his position, Trooper Byron clocked the Subaru on radar at 77 mph in the posted 65 mph zone.  He pulled out to stop the vehicle.  He subsequently conducted a visual

speed estimate on the Subaru as he followed it and estimated the speed was 80 mph.  Trooper

Byron then activated the front antennae of his radar and clocked the Subaru at 80 mph as it

passed Exit 19 in Wells. He then closed on the Subaru and activated his blue lights to stop the

vehicle, which subsequently complied.

Once stopped, Trooper Byron approached the driver and asked her for her license,

registration and insurance card.  She appeared to be very nervous; her hands were visibly shaking

as she looked for her paperwork.  After she was finally able to locate all of the paperwork,

Trooper Byron asked her to step out of the vehicle.  They walked to the rear of her vehicle.  He

then explained the reason for the traffic stop as far as the motor vehicle violations.  He also

explained to her that he had information that she may be transporting illegal drugs in the vehicle.

The driver then began to physically tremble.  Trooper Byron asked her if she knew of any drugs

in the vehicle.  She stated that she was not aware of any illegal drugs in the car.  He then asked

her if she was on bail or probation.  She said that she was currently out on bail for prior drug

possession charges.  Trooper Byron told her that he was familiar with the bail conditions and that

she was subject to search conditions.  She nodded in agreement.  He then asked her if she would

give him permission to search her vehicle and she consented.

By this time, Trooper Michael Cook had arrived on scene with his K-9, Arox, who was

certified in drug detection.  Trooper Byron explained to Trooper Cook about the consent to

search and also that she had several bail conditions.  Trooper Byron then directed Defendant

Fortson, who was sitting in the front passenger seat, to get out of the vehicle and sit on the

guardrail just ahead of the Subaru telling him to "sit there" while Trooper Cook and Arox

searched the vehicle.[1]

---

[1]  As requested by Defense counsel at the conference, the Court assumes these additional facts for purposes of
deciding the Motion to Suppress.

Trooper Cook told Byron that Arox was indicating in the area of the vehicle where Fortson had been sitting. Trooper Byron then asked Mr. Fortson if he knew where the drugs were in the vehicle. Fortson told Byron that they were under the right front passenger seat.  Trooper Byron stepped away and gave Trooper Cook that information.  This interaction occurred approximately 4-5 minutes after Byron first contacted the driver at the roadside.

Trooper Byron was subsequently contacted by Task Force Agent Michael Dumond.  TFA Dumond was not at the scene of the stop but could observe the stop through binoculars.  Dumond told Byron that he had observed Byron approach Fortson, and that when Trooper Byron stepped away to speak with Trooper Cook, Dumond had observed Fortson remove something from his jacket pocket and discard it in the grass just behind him.

Trooper Cook then brought his K-9 up to Fortson and the K-9 began to indicate around Fortson's left pocket of his jacket.  Trooper Cook then walked Arox behind the guardrail and Trooper Cook located a clear plastic bag with what appeared to be crack cocaine inside it. Both the driver and Fortson were then arrested.  Trooper Cook and Trooper Byron were the only two law enforcement personnel at the location of the traffic stop prior to the discovery of the drugs; both were in uniform and neither officer took his weapon out of the holster at any point during the traffic stop. Both police vehicles were parked behind the Subaru.  (See Affidavit of Robert Byron (Docket # 24-1) at 2-3.)

The drugs discovered in the grassy area behind the guardrail serve as the evidence for the pending indictment against Fortson, which charges that he possessed five or more grams of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(b)(1)(B).

## II.    DISCUSSION

Fortson does not challenge the lawfulness of the stop and, under Maryland v. Wilson, 519 U.S. 408 (1997), it was clearly permissible for Trooper Byron to order Fortson out of the vehicle as part of the traffic stop.  Fortson challenges only whether the officer could ask him questions without providing any Miranda warnings.  Fortson argues that the absence of a Miranda warning requires the Court to suppress his statement that drugs were located under the right front passenger seat of the Subaru; a statement Fortson made in response to Trooper Byron's question.

A Miranda warning was required only if Fortson was subject to a custodial interrogation at the time the question was posed.  See, e.g., United States v. Jackson, 544 F.3d 351, 356 (1st Cir. 2008).  "Custodial interrogation requires that the defendant was both 'in custody' and subjected to 'interrogation.'"  Id.  (citing United States v. Genao, 281 F.3d 305, 310 (1st Cir. 2002) & United States v. Ventura, 85 F.3d 708, 710 (1st Cir. 1996)).

In this case, the undisputed facts do not reveal a custodial situation.  Fortson was in a relatively neutral surrounding on the side of the Maine Turnpike for approximately 4-5 minutes and there were only two officers present with a K-9.[2]  Although Fortson reasonably and understandably did not feel he could simply walk away under the circumstances, on the spectrum of detentions, the situation remained a lawful roadside stop.  See, e.g., Arizona v. Johnson, 129 S. Ct. 781 (2009) ("[A] traffic stop of a car communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will.")  Even if the custodial status of Defendant were considered a close call, there is no evidence to suggest that the Defendant was subject to an interrogation.  While sitting on the side of the road, Fortson was asked a single question within five minutes of the start of a traffic stop.  To find that a Miranda

---

[2]  Defendant has not argued that the presence of the drug-sniffing dog is a determinative or significant factor in the "custodial interrogation" analysis.  Notably, the Supreme Court has indicated that "dog sniffs" during otherwise lawful traffic stops do not violate the Fourth Amendment.  Illinois v. Caballes, 543 U.S. 405, 410 (2005).

warning was required in this situation would be a significant expansion of the types of "interrogations" that require Miranda protection.  See United States v. Teemer, 394 F.3d 59, 66 (1st Cir. 2005) ("[S]omeone questioned at a routine traffic stop in a non-coercive setting need not be given the Miranda warning.") (citing Berkemer v. McCarty, 468 U.S. 420, 437-40 (1984)).  In the Court's view, the facts of this case are sufficiently similar to Teemer to demand a similar result.  See id. at 61-62 & 65-66.

Accordingly, the Court hereby DENIES Defendant's Motion to Suppress (Docket # 19).

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 25th day of February, 2010.